Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABRIEL RUIZ, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| AK STEEL HOLDING CORPORATION, RALPH S. MICHAEL, III, DENNIS C. CUNEO, SHERI H. EDISON, MARK G. ESSIG, WILLIAM K. GERBER, GREGORY B. KENNY, ROGER K. NEWPORT, DWAYNE A. WILSON, VICENTE WRIGHT, and ARLENE M. YOCUM, | |
| Defendants. | |

Plaintiff Gabriel Ruiz ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against AK Steel Holding Corporation ("AK Steel" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between AK Steel and Cleveland-Cliffs Inc. ("Cliffs") and Pepper Merger Sub Inc. ("Merger Sub").[1]

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements and/or omissions entered, and the subsequent damages occurred, in this District.

5.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff is, and has been at all relevant times hereto, an owner of AK Steel's common stock.

7.    Defendant AK Steel, through its subsidiary, AK Steel Corporation, produces flat-rolled carbon, and stainless and electrical steel products in the United States and

---

[1] Merger Sub is a wholly owned subsidiary of Cliffs.

2

internationally. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "AKS."

8.      Defendant Ralph S. Michael, III ("Michael") is Chairman of the Board of the Company.

9.      Defendant Dennis C. Cuneo ("Cuneo") is a director of the Company.

10.      Defendant Sheri H. Edison ("Edison") is a director of the Company.

11.      Defendant Mark G. Essig ("Essig") is a director of the Company.

12.      Defendant William K. Gerber ("Gerber") is a director of the Company.

13.      Defendant Gregory B. Kenny ("Kenny") is a director of the Company.

14.      Defendant Roger K. Newport ("Newport") is Chief Executive Officer and a director of the Company.

15.      Defendant Dwayne A. Wilson ("Wilson") is a director of the Company.

16.      Defendant Vicente Wright ("Wright") is a director of the Company.

17.      Defendant Arlene M. Yocum ("Yocum") is a director of the Company.

18.      Defendants Michael, Cuneo, Edison, Essig, Gerber, Kenny, Newport, Wilson, Wright, and Yocum are collectively referred to herein as the "Individual Defendants."

19.      Defendants AK Steel and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

20.      Cliffs operates as an iron ore mining company in the United States, Canada, and internationally. The Company is incorporated in Ohio with principal executive offices located in Cleveland, Ohio. The Company's common shares trade on the NYSE under the ticker symbol, "CLF."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

21.     On December 3, 2019, AK Steel and Cliffs issued a press release announcing that they had entered into a definitive merger agreement pursuant to which Cliffs would acquire all of the issued and outstanding shares of AK Steel common stock. Under the terms of the merger agreement, AK Steel shareholders would receive 0.40 shares of Cliffs common stock for each outstanding share of AK Steel common stock they own. The press release states, in pertinent part:

### Cleveland-Cliffs to Acquire AK Steel

*Combines complementary businesses across mining, pelletizing and innovative manufacturing to create vertically integrated producer of value-added iron ore and steel products*

*Compelling financial profile with strong balance sheet, expected earnings accretion, and strong free cash flow generation to execute on long-term growth opportunities*

*Combination creates significant value for shareholders through realization of $120 million in annual cost synergies*

December 03, 2019 06:00 AM Eastern Standard Time

CLEVELAND & WEST CHESTER, Ohio--(BUSINESS WIRE)--Cleveland-Cliffs Inc. (NYSE: CLF) and AK Steel Holding Corporation (NYSE: AKS) are pleased to announce that they have entered into a definitive merger agreement pursuant to which Cliffs will acquire all of the issued and outstanding shares of AK Steel common stock. Lourenco Goncalves, Chairman of the Board, President and CEO of Cliffs, will lead the expanded organization.

Under the terms of the merger agreement, AK Steel shareholders will receive 0.40 shares of Cliffs common stock for each outstanding share of AK Steel common stock they own. Upon completion of the transaction, Cliffs shareholders will own approximately 68% and AK Steel shareholders will own approximately 32% of the combined company, respectively, on a fully diluted basis.

\*     \*     \*

**Advisors and Counsel**

4

Moelis & Company LLC and Credit Suisse are acting as financial advisors to Cliffs and Jones Day is serving as legal counsel. Goldman Sachs & Co. LLC is acting as financial advisor to AK Steel and Weil, Gotshal & Manges LLP is serving as legal counsel.

**Board of Directors' Recommendation**

The transaction has been unanimously approved by both companies' Boards, and both Boards recommend that their respective shareholders vote in favor of the transaction.

22. On February 4, 2020, Defendants caused to be filed with the SEC a Definitive Proxy Statement on Schedule 14A in connection with the Proposed Transaction (the "Proxy Statement").

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

23. The Proxy Statement, which recommends that AK Steel shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) AK Steel's and Cliffs' financial projections; (ii) the financial analyses performed by AK Steel's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Goldman.

24. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the AK Steel Board and Reasons for the Merger; (ii) Opinion of Goldman Sachs, AK Steel's Financial Advisor; and (iii) Unaudited Forecasted Financial Information.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated March 10, 2020 shareholder vote, AK Steel shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

5

**1.   Material Omissions Concerning AK Steel's and Cliffs' Financial Projections**

26.     The Proxy Statement omits material information concerning AK Steel's and Cliffs' financial projections.

27.     The Proxy Statement provides the following five sets of financial projections: (1) "Cliffs Unaudited Forecasted Financial Information"; (2) "AK Steel-Adjusted Cliffs Unaudited Forecasted Financial Information"; (3) "AK Steel Unaudited Forecasted Financial Information"; (4) "Cliffs-Adjusted AK Steel Unaudited Forecasted Financial Information"; and (5) "Pro Forma Unaudited Forecasted Financial Information" (collectively, the "Projections").

28.     The Proxy Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (a) Unlevered Free Cash Flow, (b) Adjusted EBITDA, (c) Adjusted EBITDAP, and (d) Levered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29.     When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd

out" more reliable GAAP information.[2]

30.    The disclosure of AK Steel's and Cliffs' projected financial information is material because it would provide AK Steel shareholders with a basis to project the future financial performance of AK Steel and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by AK Steel and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31.    Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

32.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to AK Steel shareholders.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 4, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

### 2.   Material Omissions Concerning Goldman's Financial Analyses

33.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman.

34.     The Proxy Statement fails to disclose the following concerning Goldman's "*Premia Paid Analysis*": (1) the transactions observed by Goldman in its analysis; and (2) the individual premiums paid in each of the transactions.

35.     The Proxy Statement fails to disclose the following concerning Goldman's "*Implied Premia and Multiples*": (1) the total number of fully diluted shares of AK Steel common stock outstanding as of November 29, 2019; and (2) AK Steel's net debt as of September 30, 2019.

36.     The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis for AK Steel*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 10.5% to 11.5%, and of 11.0%, (ii) perpetuity growth rates ranging from 1.2% to 3.3%, and (iii) terminal year multiples ranging from 6.0x to 7.0x; (2) all line items used to calculate the unlevered free cash flows to be generated by AK Steel for the period from October 1, 2019 to December 31, 2024; (3) the range of illustrative terminal values for AK Steel as of December 31, 2024; (4) the net debt of AK Steel as of September 30, 2019; (5) the unfunded pension and OPEB liabilities as of September 30, 2019; and (6) the number of fully diluted shares of AK Steel common stock as of November 29, 2019.

37.     The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis for AK Steel Shares on a Pro Forma Basis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.5% to 9.5%, and of 7.75%, (ii) perpetuity growth rates ranging from 0.4% to -1.9%, and (iii) terminal year multiples ranging from 6.0x to 7.0x; (2) all line items used to calculate the unlevered free cash flows to be generated by Cliffs on a pro forma basis for the period from October 1, 2019 to

December 31, 2024; (3) the range of illustrative terminal values for Cliffs on a pro forma basis as of December 31, 2024; (4) the net debt and unfunded pension liabilities of Cliffs on a pro forma basis as of September 30, 2019; and (5) the number of fully diluted shares of Cliffs common stock outstanding as of November 29, 2019.

38.     The valuation methods, underlying assumptions, and key inputs used by Goldman in rendering its purported fairness opinion must be fairly disclosed to AK Steel shareholders. The description of Goldman's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Goldman's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to AK Steel shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Goldman

39.     The Proxy Statement omits material information concerning potential conflicts of interest involving Goldman.

40.     The Proxy Statement discloses that "[d]uring the two-year period ended December 2, 2019, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to Cliffs and/or its affiliates of approximately $7.35 million, net of expenses and other adjustments."

41.     The Proxy Statement, however, fails to disclose whether and to what extent Goldman has provided past services to AK Steel and/or its affiliates, including the timing and nature of these services and the amount of compensation Goldman received for providing such services during the two-year period ended December 2, 2019.

42.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to AK Steel shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

50.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 4, 2020                                   Respectfully submitted,

                                                          **HALPER SADEH LLP**

                                                          By: /s/ Daniel Sadeh
                                                          Daniel Sadeh, Esq.
                                                          Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                          375 Park Avenue, Suite 2607
                                                          New York, NY 10152
                                                          Telephone: (212) 763-0060
                                                          Facsimile: (646) 776-2600
                                                          Email: sadeh@halpersadeh.com
                                                                  zhalper@halpersadeh.com

*Counsel for Plaintiff*